UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| JAMES COMINSKY, | ) | CASE NO. 1:07 CV 1261 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| FEDERAL BUREAU OF | ) | AND ORDER |
| INVESTIGATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On April 30, 2007, plaintiff pro se James Cominsky filed this Bivens[1] action against the Federal Bureau of Investigation ("FBI"), FBI Special Agent Russell Csaszar, former FBI Chief Division Counsel Special Agent Scott Brantley, current FBI Chief Division Counsel Paul Keppler, and the United States Attorney General. In the complaint, plaintiff asserts that the defendants failed to fully investigate his fraud and corruption allegations which pertained to a civil action filed in the Lake County Court of Common Pleas. He seeks $ 3,700,000.00 from each defendant and criminal prosecution of the individual defendants.

---

[1] Bivens v. Six Unknown Agents, 403 U.S. 383 (1971). While plaintiff cites 42 U.S.C. §1983 as the basis for his claims, that section is clearly inapplicable, as there is no allegation of action under color of state law.

## **Background**

This complaint is factually related to a previous case Mr. Cominsky filed in this court, Cominsky v. Mitrovitch, Case No. 1:04 CV 536 (N.D. Ohio filed Mar. 18, 2004), which was assigned to United States District Judge Paul R. Matia.  That case, in turn, stemmed from a civil matter litigated in the Lake County Court of Common Pleas.  Some of the following factual background and procedural history were taken from Cominsky v. Mitrovitch, Case No. 1:04 CV 536.  Because Mr. Cominsky continually refers to the facts of the Lake County case, the facts gleaned from his prior federal case are used solely to provide a factual context for his present claims before this court.

Mr. Cominsky and Diane Malner started dating in July 1985.  Shortly thereafter, the couple began living together in Ms. Malner's home. Throughout their relationship, Mr. Cominsky and Ms. Malner did not have a specific oral or written agreement concerning how to handle their joint assets.  In 1987, Ms. Malner purchased a dump truck for $55,000 and created a trucking company in order to supply Mr. Cominsky with employment.  To do this, she borrowed $30,000 from a lending institution and $25,000 from her parents, Andrew and Sylvia Aljancic ("the Aljancics").

In 1989, the couple purchased 22.39 acres for the sum of $95,000. The Aljancics provided one-half of the purchase price, while Mr. Cominsky and Ms. Malner supplied the remainder. During the summer of 1989, development began on the property. In order to facilitate the building of houses on the property, the Aljancics purchased a bulldozer for $20,000, and incurred various other costs associated with the development of the land. In 1991, Ms. Malner and Mr. Cominsky formed a corporation called American Cherished Homes, Inc. to begin construction

of three homes on the property. In October of that year, several acres were deeded to the Aljancics so that they could build a home. Mr. Cominsky constructed the home at cost. The house was completed in 1992 and the Aljancics began to occupy the residence.

A second home was built on the property in 1993. To finance the construction, Ms. Malner obtained a loan secured by a mortgage on her personal residence. See Cominsky v. Malner, No. 98-L-242, 2001 WL 20551 (Ohio App. 11 Dist. Dec. 29, 2000). The remainder of the funding came from a personal loan from the Aljancics. See Cominsky v. Malner, No. 98-L-242, 2001 WL 20551 (Ohio App. 11 Dist. Dec. 29, 2000). When the home was completed in 1993, Ms. Malner sold her residence and moved with Mr. Cominsky into the newly constructed home while it was listed for sale. The house was sold in December 1996. Mr. Cominsky and Ms. Malner began construction on a third home on the rear portion of the property in 1993. The house was completed in 1996. Shortly thereafter, Mr. Cominsky and Ms. Malner moved into this third home.

By 1997, the relationship between Mr. Cominsky and Ms. Malner had become acrimonious. In March of that year, Ms. Malner obtained a protective order from the Lake County Domestic Relations Court which temporarily removed Mr. Cominsky and his son from the home. The domestic relations action was dismissed; however, Mr. Cominsky was not permitted to return to the home.

Mr. Cominsky then filed a complaint for partition of real estate in the Lake County Court of Common Pleas on May 7, 1997, naming Ms. Malner, the Aljancics, and two financial institutions. Several tort claims were also included in the complaint. The case was assigned to Judge Paul H. Mitrovitch. Ms. Malner filed a counterclaim against Mr. Cominsky seeking an undivided 4/5 interest in the property, and reimbursement for personal property and equipment that

3

Mr. Cominsky had taken when he vacated the premises. The Aljanics also filed a counter claim against Mr. Cominsky and a cross claim against Ms. Malner seeking approximately $ 169,438.00 which they claimed they loaned the couple through the years.

The matters proceeded to trial. On October 8, 1998, Judge Mitrovitch determined that Mr. Cominsky and Ms. Malner shared a one-half interest in the property containing the home in which they last lived together. He partitioned the property and appointed commissioners to impartially view, appraise, and sell the property. Judgment in the amount of $ 123,238.86 was rendered in favor of Ms. Malner. The Aljancic's were granted judgment against Mr. Cominsky and Ms. Malner, jointly and severally, in the sum of $ 111,238.00. The Aljancics also received a judgment against Mr. Cominsky in the amount of $ 18,000.00. The tort claims were dismissed. Mr. Cominsky filed several appeals of this judgment and sought relief from the United States Supreme Court and from this court. The judgment of the trial court has continually been upheld.

Mr. Cominsky disagrees with the judgment. He claims that the Judge and the attorneys collaborated together to commit fraud. He claims $ 136,667 is missing from the judgment entry. He claimed his post-judgment motions were improperly denied and he questioned the Judge's ability to be impartial. He has been held in contempt of court for violating a restraining order and has been barred from filing any pro se motions in the case.

During the course of the Lake County litigation, Mr. Cominsky went to the Lake County Sheriff and to the local office of the FBI in an attempt to have Judge Mitrovitch, the attorneys and the other parties to his case prosecuted criminally for fraud and corruption. He initially spoke to Detective Eugene Lucci regarding the conduct of one of his own attorneys. He gave Det. Lucci numerous court documents as evidence of fraud and asked him to investigate the

4

actions of the Judge and the other trial participants.  He contends that Det. Lucci did not properly investigate the allegations.  He states that he sought assistance from the local FBI and was referred to Special Agent Csaszar. He claims Agent Csaszar promised he would oversee Detective Lucci's investigation. Detective Lucci issued a report which was unfavorable to Mr. Cominsky.  The report included a statement from Mr. Cominsky's business accountant claiming that he was afraid of Mr. Cominsky.  Mr. Cominsky took the report and confronted the accountant about the comment.  The accountant denied making the comments.  Mr. Cominsky contends therefore that Detective Lucci produced a fraudulent report.  He asked Agent Csaszar to investigate Detective Lucci as well as Judge Mitrovitch and other parties to the civil action.  Agent Csaszar did not initiate criminal proceedings against any of the people Mr. Cominsky believed were involved in the alleged fraud.

Special Agent Brantley took over Mr. Cominsky's complaints in April 2000.  He told Mr. Cominsky that his accusations did not rise to the level of a federal violation over which the FBI would have jurisdiction.  Mr. Cominsky claims Agent Brantley did not conduct a proper investigation.

After Special Agent Brantey retired, Special Agent Keppler took over his cases.  Mr. Cominsky states that he spoke with Agent Keppler and was told that Agent Csaszar did not agree to oversee Detective Lucci's investigation.  He nevertheless indicated that he would present the matter to the United States Attorney's Office for evaluation.  The United States Attorney declined to pursue criminal charges.

Mr. Cominsky now claims that the FBI, Special Agent Csaszar, Special Agent Brantley and Special Agent Keppler should be prosecuted under 18 U.S.C. §§ 241 and 242, and 18 U.S.C. §§ 3,4 for failing to prosecute the individuals involved in his Lake County case.  He also

seeks monetary damages against these defendants under 42 U.S.C. § 1983.

## **Analysis**

While pro se pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), the district court may dismiss an action sua sponte if the complaint is so "implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion" as to deprive the court of jurisdiction. Apple v. Glenn, 183 F.3d 477, 479 (6th Cir. 1999)(citing Hagans v. Lavine, 415 U.S. 528, 536-37 (1974)). The claims asserted in this action satisfy these criteria.

As an initial matter, criminal actions in the federal courts are initiated by the United States Attorney. 28 U.S.C. § 547; Fed. R. Crim. P. 7(c). This court lacks jurisdiction to conduct an independent investigation and initiate a criminal prosecution. Title 18 U.S.C. §§ 241, 242 and 18 U.S.C. §§ 3,4 are criminal statutes. They provide no private right of action. United States v. Oguaju, No. 02-2485, 2003 WL 21580657, at *2 (6th Cir. July 9, 2003); Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 511 (2d Cir.1994). Mr. Cominsky cannot bring a civil action based on these statutes.

Furthermore, although Mr. Cominsky also requests an award of monetary damages, he has included no discernable legal theory under which damages could be awarded. The United States, as a sovereign, cannot be sued without its prior consent, and the terms of its consent define the court's subject matter jurisdiction. McGinness v. United States, 90 F.3d 143, 145 (6th Cir. 1996). This immunity covers all agencies of the United States and all employees of the United States government sued in their official capacities. A waiver of sovereign immunity must be strictly construed, unequivocally expressed, and cannot be implied. United States v. King, 395 U.S.

6

1,4 (1969); Soriano v. United States, 352 U.S. 270, 276 (1957).  Mr. Cominsky contends he is asserting claims under 42 U.S.C. § 1983.  Because that statute only applies to cases in which the plaintiff has been injured by conduct of state government actors, the court construed this as a Bivens action.  Even liberally construing the pleading, however, there is not a sufficient indication that the United States waived its sovereign immunity.  A Bivens claim cannot be asserted against the United States government, its agencies or its employees in their official capacities.  Berger v. Pierce, 933 F.2d 393, 397 (6th Cir.1991); see Name.Space, Inc. v. Network Solutions, Inc., 202 F.3d 573, 581 (2d Cir. 2000)(finding that agencies, instrumentalities, and officers of the federal government cannot be sued under antitrust laws).  There is no suggestion in the complaint that Mr. Cominsky is raising any other type of claim.

Even if Mr. Cominsky intended to assert claims against the Special Agents in their individual capacities, he has not set forth a claim upon which relief could be granted.  His complaint is premised entirely on his belief that the defendants violated his rights by failing to arrest Judge Mitrovitch and the other participants in the Lake County civil action.  The benefit that a third party may receive from having someone else arrested for a crime, however, does not amount to a constitutional violation when police fail to make the arrest.  Howard ex rel. Estate of Howard v. Bayes, 457 F.3d 568, 575 (6th Cir. 2006).  "[T]he framers of the Fourteenth Amendment and the Civil Rights Act of 1871, 17 Stat. 13 (the original source of § 1983), did not create a system by which police departments are generally held financially accountable for crimes that better policing might have prevented ...." Id. (quoting Parratt v. Taylor, 451 U.S. 527, 544(1981)).  Mr. Cominsky did not have a constitutionally protected interest in the arrest and prosecution of the defendants.

Moreover, Mr. Cominsky fails to identify any particular constitutional right he

7

believes to have been violated by the defendants. He provides a very lengthy narrative of facts and then concludes that the defendants should pay him monetary damages for their actions. Principles requiring generous construction of pro se pleadings are not without limits. See Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989); Beaudett v. City of Hampton, 775 F.2d 1274, 1277 (4th Cir. 1985). A complaint must contain either direct or inferential allegations respecting all the material elements of some viable legal theory to satisfy federal notice pleading requirements. See Schied v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 437 (6th Cir. 1988). District courts are not required to conjure up questions never squarely presented to them or to construct full blown claims from sentence fragments. Beaudett, 775 F.2d at 1278. To do so would "require ...[the courts] to explore exhaustively all potential claims of a pro se plaintiff, ... [and] would...transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." Id. at 1278. Moreover, plaintiff's failure to identify a particular legal theory in his complaint would place an unfair burden on the defendants to speculate on the potential claims that plaintiff may be raising against them and the defenses they might assert in response to each of these possible causes of action. See Wells v. Brown, 891 F.2d at 594. Even liberally construed, the complaint does not sufficiently state the federal constitutional claim or claims upon which plaintiff intends to base his action.

## Conclusion

Accordingly, this action is dismissed. The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[2]

---

[2] 28 U.S.C. § 1915(a)(3) provides:

(continued...)

IT IS SO ORDERED.

Dated: May 29, 2007                              *s/    James S. Gwin*
                                                 JAMES S. GWIN
                                                 UNITED STATES DISTRICT JUDGE

---

[2] (...continued)
An appeal may not be taken <u>in forma pauperis</u> if the trial court certifies that it is not taken in good faith.